# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

VANESSA COLE, as Personal Representative  PLAINTIFF
of the Estate of Roy Lee Richards, Jr., Deceased

v.                          NO. 4:17CV00553 JLH

DENNIS HUTCHINS, Individually;
KENTON BUCKNER, Individually and Officially;
and the CITY OF LITTLE ROCK                    DEFENDANTS

## OPINION AND ORDER

Shortly after midnight on October 25, 2016, Little Rock police officer Dennis Hutchins shot and killed Roy Lee Richards, Jr. Vanessa Cole, as personal representative of Richards's estate, has sued Hutchins, claiming under 42 U.S.C. § 1983 that he used excessive force when he shot Richards, violating the Fourth Amendment. She also alleges Arkansas-law claims of wrongful death and survival against Hutchins. In addition to suing Hutchins, Cole sued Kenton Buckner, then Chief of the Little Rock Police Department,[1] in his individual and official capacities, as well as the City of Little Rock. She asserts that the LRPD has a custom of tolerating excessive force by failing to adequately investigate police-involved shootings. She contends that Buckner allowed or authorized this custom in the LRPD.

All the defendants move for summary judgment, arguing that there is no need for a trial because the material facts underlying Cole's claims are not genuinely disputed and that the undisputed facts show that the claims fail. For the reasons that the Court will explain, the

---

[1] Buckner resigned on November 16, 2018. Document #48-1. His successor will be automatically substituted as a defendant on the official capacity claims against Buckner. Fed. R. Civ. P. 25(d). No successor has been chosen, nor does the record identify who, if anyone, is the acting chief. Because the official capacity claims are, in reality, claims against the City, no party's rights will be affected by continuing without correcting the name of the official capacity defendant. *Id*.

defendants' motion is granted in part and denied in part. Buckner and the City are entitled to summary judgment. Cole's claims against Hutchins individually, however, depend on facts that are sharply in dispute. A jury, not the Court, must decide those facts.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

### *Claims Against Hutchins*

Cole brings her first claim against Hutchins under 42 U.S.C. § 1983, which provides a civil action for a deprivation of federal rights against any person acting under color of state law. Cole

argues that Hutchins, as Little Rock police officer, violated Richards's Fourth Amendment rights by using excessive force against him. "Since this case presents an issue of whether an officer used excessive force, the case must be analyzed under the Fourth Amendment's objective reasonableness standard." *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (citation and internal quotation marks omitted). *See also Capps v. Olson*, 780 F.3d 879, 884 (8th Cir. 2015) (quoting *Craighead*, 399 F.3d at 961); *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). The issue is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his intent or motivation. *Craighead*, 399 F.3d at 961 (quoting *Graham v. Connor*, 490 U.S. 386, 388, 190 S. Ct. 1865, 1867-68, 104 L. Ed. 2d 443 (1989)). The use of deadly force is reasonable if an officer has probable cause to believe the suspect poses a threat of serious physical harm to the officer or others. *Loch*, 689 F.3d at 965 (citing *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

Hutchins asserts the defense of qualified immunity. He contends that a reasonable officer in the circumstances would have believed that Richards posed an imminent threat to another person's life and that it was objectively reasonable for him to use deadly force to protect that person. In assessing the merits of this defense, the Court must view Hutchins's actions objectively from the perspective of a reasonable police officer in his shoes at that time, while assuming the facts in the light most favorable to Cole. *Loch*, 689 F.3d at 965.

Hutchins is entitled to immunity from Cole's claim unless the record evidence, viewed in the light most favorable to Cole, shows that he violated a constitutional right that was clearly established at the time of the violation. *Malone v. Hinman*, 847 F.3d 949, 952 (8th Cir. 2017). To be clearly established, preexisting law must have made the unlawfulness of an officer's conduct apparent so

3

that he had fair and clear warning that he was violating the constitution. *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Still, to defeat a claim of qualified immunity a plaintiff is not required to "show that the 'very action in question has been previously held unlawful.'" *Ellison v. Lesher*, 796 F.3d 910, 914 (8th Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). The defense of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Walker*, 881 F.3d at 1060 (quoting *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 551-52, 196 L. Ed. 2d 463 (2017) (per curiam)). It serves to protect officials who make bad guesses in gray areas, and it gives them breathing room to make reasonable but mistaken judgments. *Id*.

The undisputed facts are as follows.[2] Late on October 24, 2016, Richards, who was intoxicated, came to the front door of the home of his uncle, Darrell Underwood, on East Eighth Street in Little Rock. Richards and Underwood began to have an on-again-off-again altercation. Underwood asked Richards to leave, which he did, but Richards eventually returned. Around midnight, several neighbors heard a commotion involving the two men in Underwood's front yard. Some heard yelling and saw Richards go back and forth to his truck. Underwood came in and out of his house numerous times. Underwood became angry when Richards showed him that he had a gun. Underwood called 911. Document #63-9 at 23. Eventually, the two men fought in the front yard. Several neighbors called 911, and several continued to watch the situation unfold.

On October 25, 2016, Dennis Hutchins had been a police officer with the LRPD for sixteen years, frequently working in high crime areas. After 911 calls had reported a disturbance at the East

---

[2] Unless otherwise indicated, the following facts are taken from Cole's response to the defendants' statement of material facts. Document #64.

Eighth Street residence, Hutchins and his partner that shift, Officer Justin Tyer, responded. LRPD communications informed them based on the calls that the subject was intoxicated and armed with a long gun. Because of the report that the subject was armed with a long gun, Hutchins and Tyer parked half a block away on the opposite side of the street and approached the residence on foot, out of concern for officer safety. A neighbor, Henry Michael Stotts, told Richards and Underwood that the police had arrived. Underwood got up and walked toward the porch steps. Richards got up and walked toward the driver's side of his vehicle, which was parked in the driveway.

Viewing the evidence in the light most favorable to Cole, and drawing all reasonable inferences in her favor, a jury could further find the following. At the time Stotts announced the police presence, Underwood and Richards continued to fight on the ground for ten seconds or more. Document #63-13 at 46-47.[3] After they stopped fighting, Richards walked to his vehicle. Observers, including Hutchins, thought Richards walked to the vehicle to leave. Instead, Richards retrieved what all witnesses believed was a rifle[4] from the driver's side door, and turned towards Underwood's house. By that time, Underwood had walked up the steps to his porch, and was in the middle of his porch. Document #63-9 at 34-35; Document #63-8 at 31. Holding the gun, Richards walked toward Underwood's porch. Document #63-13 at 49-50. Hutchins first saw Richards with the gun when Richards emerged from behind the vehicle because Hutchins approached the property facing the vehicle's passenger side. Richards began walking up the steps to Underwood's porch.

---

[3] The following facts, where disputed, are supported by record citations. Where the facts are undisputed, the Court again refers to Cole's response to the defendants' statement of material facts. Document #64.

[4] In fact, it was a pellet gun or a B-B gun, but every witness thought it was a rifle or similar weapon.

5

Document #63-8 at 32. According to one witness – Charles James – Richards never held the gun with the barrel pointed at Underwood. Document #63-8 at 32-33. At least two witnesses say that Richards carried the gun vertically – either pointed up toward the sky, as one might hold a flag, or pointed down toward the ground, along his leg. Document #63-8 at 30; Document #63-5 at 58.[5] Underwood walked into the house and slammed the door. Document #63-9 at 34, 55; Document #63-8 at 30; *see also* Document #63-9 at 14. According to James, Richards then backed down a few steps and turned in the direction of his car. Document #63-8 at 30. James testified, "he's backing down . . . the stairs and turned slightly that way with the gun again, vaguely, like at about ten o'clock (gesturing). And the shots were just fired . . . ." *Id*. at 34. Richards, James said, was moving "backwards and west. But there were so many shots fired in such a quick succession . . . and he could have been spun around. I don't know. I mean, he just – he just hit the ground so fast (gesturing)." *Id*. at 35. James believes that Richards was not facing Underwood's house when the shots were fired. *Id*. To James it appeared that Richards was turning to leave. *Id*. at 78-79. At this time, Hutchins was still a little more than eighty feet away from Richards. Giving no warning, Hutchins shot his gun toward Richards five times. One of the shots struck Richards in the head, killing him. James estimated that, at the time Hutchins fired the shots, Underwood had been inside his house for five seconds. *Id*. at 38. By the time the shots were fired, Underwood had locked the front door, walked across the room and into the hallway, and begun speaking to his roommate. Document #63-9 at 35-36; Document #63-5 at 105. On this version of the facts, a jury reasonably

---

[5] Officer Tyer has made statements both that Richards held the gun vertically and that he held it horizontally. Document #63-5 at 58, 63-64. What Tyer meant in these statements and the weight they should be given are matters for the jury to decide. *Henderson v. City of Woodbury*, 909 F.3d 933, 940 (8th Cir. 2018).

6

could conclude that Richards did not pose an immediate threat of physical injury or death when Hutchins began firing.

Other witnesses describe the events differently. The testimony is in conflict on key points. Disputed fact questions and conflicting testimony, however, cannot be resolved on summary judgment. *Henderson*, 909 F.3d at 940. The jury, not the Court, must make credibility determinations, weigh all the evidence, and make legitimate inferences from all the evidence in order to resolve the predicate facts. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

It was clearly established on October 25, 2016, that a law enforcement officer may use deadly force only to protect himself or another person from an imminent threat of serious physical injury or death. *See Garner*, 471 U.S. at 11, 105 S. Ct. at 1701 (deadly force unjustified "[w]here the suspect poses no immediate threat to the officer and no threat to others"); *Craighead*, 399 F.3d at 962-63 (collecting cases holding that deadly force may not be used unless the officer reasonably believes it is necessary to prevent serious injury or death). By October 25, 2016, police officers had fair and clear warning that they could not use deadly force against a person who posed no immediate threat to cause serious physical injury or death. Hutchins is therefore not entitled to qualified immunity on Cole's Fourth Amendment claim.

Hutchins argues the wrongful death and survival claims under Arkansas law fail because the undisputed facts show that his conduct did not constitute a wrongful act. *See* Document #50 at 23-24; Ark. Code Ann. § 16-62-102(a)(1). Because the questions of fact discussed above preclude making this determination as a matter of law, Hutchins is not entitled to summary judgment on Cole's claims for wrongful death and survival.

*Claims Against the City*[6]

A municipality may be held liable under § 1983 when one of its employees deprives a person a constitutional right only under limited circumstances. *See Perkins v. Hastings*, 2019 WL 469718, at *6 (8th Cir. Feb. 7, 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). A city is not liable for the acts of its employees under a *respondeat superior* theory; rather, a city is liable only if the city itself causes the constitutional violation. *See id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). A plaintiff must therefore identify an official city policy or a city custom or pattern that caused her constitutional injury. *Id.*

Cole does not argue that the City of Little Rock has or had an official policy of unconstitutional conduct. She argues, instead, that the City has a custom of tolerating police misconduct by conducting biased investigations into police-involved shootings. Cole contends that this custom caused the violation of Richards's Fourth Amendment rights.

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not

---

[6] Cole's claim against Chief Buckner in his official capacity as police chief is in reality another form of action against the City of Little Rock. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998).

8

held liable solely for the actions of its employee." *Id.* at 405, 117 S. Ct. at 1389. A plaintiff must prove:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (alterations omitted) (quoting *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)). Thus, Cole's claim against the City requires proof of a pattern of constitutional violations. *See Perkins*, 2019 WL 469718 at *7 ("The district court did not err when it required Perkins to establish a pattern of constitutional violations to prove her claim."). To defeat the City's motion for summary judgment, Cole therefore must present evidence of a pattern of excessive force used in officer shootings to which City officials were deliberately indifferent. *See id.* at *6-*7 (citing *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999)). She has not done so. She argues at length that the City's investigations of its officers' uses of deadly force are biased and seriously flawed, but she presents no evidence of a pattern of excessive force by the LRPD. Without proof of a pattern of excessive force, no issue is presented as to whether the City has been deliberately indifferent.

Cole has pointed the Court to the fatal shooting of Bobby Moore by former LRPD Officer Joshua Hastings on August 12, 2012. The LRPD investigated the incident internally and then-police-Chief Thomas terminated Hastings for shooting Moore. A LRPD "Deadly Force Review

9

Board" convened and likewise determined that Hastings's conduct in shooting Moore did not adhere to his training and that the shooting had been avoidable. *See Perkins*, 2019 WL 469718 at *4-*5. The shooting of Bobby Moore is an instance in which a Little Rock police officer used excessive force, but one instance does not constitute a pattern, nor does the City's response to that shooting manifest deliberate indifference.

Cole attempts to highlight major investigatory failures at the LRPD. She says that there is a permanent and well-settled laxness in its investigations. Document #63 at 56. She presents evidence that investigations occur in-house, so they are potentially biased. *Id.* at 57. She claims that the LRPD fails to thoroughly question essential eyewitnesses; fails to properly handle weapons, crime scenes, and files; fails to maintain a list of untruthful officers for *Brady* purposes; fails to conduct needed follow-up interviews; and that LRPD officers frequently fail to follow internal policies. *Id.* at 28-79.

In *Perkins* – the civil lawsuit brought by the personal representative of Bobby Moore's estate – the Eighth Circuit addressed and rejected allegations about the LRPD almost identical to those Cole makes in this case. The Eighth Circuit held:

> In sum, Perkins claims on appeal that the City maintained a custom of facade investigations based on alleged shortcomings in the City's investigations into officer-involved shootings. The actionable municipal custom here must be one of deliberate indifference to a pattern of excessive force, however, which Perkins has not established in light of the fact that she has not shown a pattern of underlying constitutional violations.

*Perkins*, 2019 WL 469718 at *8. The time-frame at issue in *Perkins* and the time-frame at issue here are not the same, nor was Buckner the police chief during the period of time at issue in *Perkins*. The Eighth Circuit's conclusion in *Perkins* nevertheless holds true here. Like the plaintiff in *Perkins*, Cole has not shown a pattern of LRPD officers using excessive force to which LRPD officials were

10

deliberately indifferent. Cole's claim against Chief Buckner in his official capacity and the City of Little Rock therefore fails as a matter of law.[7]

### *Individual Capacity Claim Against Chief Buckner*

In her amended complaint Cole states that she sues Chief Buckner not only in his official capacity but also in his individual capacity. *See* Document #3 at 1. The complaint is vague, however, as to the nature of her claim against Buckner, individually. In Count II of her complaint, Cole asserts a claim against "Chief Kenton Buckner and the City of Little Rock" for "*Monell* violations." *Id.* at 30. Cole does not name Buckner as a defendant in any other count. *See* Document #64 at 1-3, 29, 30, 53, 54. "A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). No claim is made that Buckner participated in the shooting of Richards, nor does Cole argue that Buckner failed to train Hutchins. She never expressly alleges that Buckner failed to supervise, but she does argue that Buckner was aware of and condoned the biased, flawed nature of the City's investigations into its officers' use of force, which arguably is a claim that Buckner failed to supervise. The standard of liability on a failure-to-supervise claim is deliberate indifference to or tacit authorization of the unconstitutional acts. *Id.* The Court has already held on Cole's claim against the City that she has failed to present evidence from which a reasonable jury could find a custom or pattern of unconstitutional conduct. The same conclusion must be reached as to Cole's

---

[7] The Court notes that on October 2013, Chief Judge Miller granted summary judgment in favor of the City in a police shooting case, holding that the record did not support a custom of improper investigations into uses of excessive force within the LRPD. *See Ellison v. Lesher*, 4:11CV00752-BSM (E.D. Ark. Oct. 25, 2013).

claims against Buckner individually. Buckner is entitled to qualified immunity on Cole's claim against him individually.

The defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Document #48. Summary judgment is GRANTED to Kenton Buckner, individually and in his official capacity, and to the City of Little Rock, on the claims of Vanessa Cole, as personal representative of the Estate of Roy Lee Richards, Jr. Dennis Hutchins's motion for summary judgment is DENIED.

IT IS SO ORDERED this 22nd day of February, 2019.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE